PIER 3, INC., demandante y apelante, *v.* MANUEL V. DOMENECH, sustituído por RAFAEL SANCHO BONET, TESORERO DE PUERTO RICO, demandado y apelado.

Núm. 7264.—*Sometido:* Diciembre 10, 1936. *Resuelto:* Junio 9, 1937.

*Henry G. Molina,* abogado de la apelante; *Hon. Procurador General B. Fernández García* y *R. Cordovés Arana, Procurador General Auxiliar,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR HUTCHISON emitió la opinión del tribunal.

Pier 3, Inc., demandante en un pleito sobre devolución de contribuciones pagadas bajo protesta, apela de una sentencia adversa. Las únicas cuestiones levantadas por el señalamiento de errores son:

"Primer error.—La corte erró al no resolver que los postes y pilotes son mejoras (*improvements*) que pertenecen a El Pueblo de Puerto Rico y en tal virtud no son tributables a tenor del artículo 291-(*b*) del Código Político.

"Segundo error.—La corte erró al no resolver que la valoración de los pilotes y postes era errónea y exagerada porque se había fijado el valor total del dominio absoluto de los mismos como propiedad de la apelante en vez del valor del usufructo (*leasehold interest*) que es todo lo que corresponde a la apelante en dichos bienes."

No tenemos ante nos una transcripción de evidencia. Sin embargo, de las alegaciones, de la "relación del caso y opinión" emitida por la Corte de Distrito de San Juan y de los alegatos, se desprenden ciertos hechos aparentemente incontrovertidos.

En octubre de 1928, el Gobernador aprobó una franquicia a virtud de la cual la Comisión de Servicio Público, autorizó la construcción, mantenimiento y explotación de un "muelle de servicio público, de dos plantas, con todas sus dependencias en el sitio y lugar indicados para el proyectado muelle Núm. 3." La autorización "incluía todo el trabajo y operaciones de la naturaleza que fueran necesarios para explotar con éxito y lucrativamente el muelle y todas las dependencias que se autorizaba construir, mantener y operar." Por el artículo 2 de la franquicia se requería al cesionario, predecesor en título de la aquí demandante, que "construyera

a través de dicho muelle una vía ferroviaria que conectara con las líneas de la American Railroad Company of Porto Rico, que estaban frente a dicho muelle Núm. 3.'' Por el artículo 3 se requería del cesionario que celebrara un contrato con el Comisionado del Interior sobre el arrendamiento de los terrenos sumergidos, propiedad del Pueblo de Puerto Rico, en los cuales debía construirse el proyectado muelle. También se le requería que celebrara un contrato con la Junta del Puerto de San Juan "sobre el uso de aquella parte del malecón ya construída por la Junta del Puerto, que el cesionario'' se proponía ocupar. El artículo 11 leía en parte así:

> ''. . . . el muelle, la vía ferroviaria y sus dependencias, el equipo y las facilidades del cesionario, así como todas las propiedades construídas o usadas de acuerdo con esta franquicia, podrán ser tomados, comprados o adquiridos por El Pueblo de Puerto Rico, en cualquier momento durante la vigencia de esta franquicia, a un precio justo y razonable que no deberá incluir el valor de la presente ni ningún valor adicional que la misma pueda haber dado a dichas obras o a las propiedades del cesionario; y dicho precio no excederá del costo de tales obras y propiedades, menos su depreciación; Disponiéndose, sin embargo, que al expirar el término de esta franquicia los terrenos pertenecientes al Pueblo de Puerto Rico, incluyendo los reclamados al mar, así como todas las mejoras hechas en los mismos por el cesionario, excluyendo los edificios, revertirán al Pueblo de Puerto Rico, libre de todo costo.''

El muelle de dos plantas construído bajo la autoridad de esta franquicia sobre terrenos sumergidos pertenecientes al Pueblo de Puerto Rico, luego de otorgarse un contrato de arrendamiento a largo plazo, no se convirtió necesariamente ipso facto en propiedad del Pueblo de Puerto Rico como parte de los terrenos en que se fabricó. El *Disponiéndose* contenido en el artículo 11 de la franquicia relativo a la toma, compra o adquisición por El Pueblo de Puerto Rico del muelle y de otras propiedades construídas por el cesionario en cualquier momento durante el término de la franquicia por un precio justo y razonable, niega definitivamente la existencia de intención alguna por parte de los contratantes, de que el

muelle, al ser construído, se convirtiera inmediatamente en propiedad del Pueblo de Puerto Rico. De conformidad con los términos expresos de los artículos 1463 y 416 del Código Civil (edición de 1930), un arrendatario puede retirar de la propiedad arrendada cualesquiera mejoras hechas en ésta "si fuere posible hacerlo sin detrimento de los bienes." Evidentemente este derecho a retirar las mejoras presupone el dominio de las mismas en el arrendatario, aunque si no ejerce tal derecho su título a las mejoras pasará al arrendador.

El *Disponiéndose* de la franquicia equivalía sustancialmente a una repetición de los artículos 1463 y 416 en tanto en cuanto éstos eran aplicables a la relación de arrendador y arrendatario y a las mejoras que no fueran edificios. Empero, el *Disponiéndose* era más específico en la referencia que hacía a la fecha en que expiraba la franquicia y hasta ese punto exponía con más claridad el objeto de anticipar y de impedir cualquier alegación de dominio o cualquier ejercicio del derecho incidental por parte del cesionario a retirar las mejoras una vez expirado el término de la franquicia.

Los postes y pilotes a que se hacía referencia en el segundo error señalado fueron tasados por la Junta de Revisión e Igualamiento en $138,260. Si al tiempo de concederse la franquicia y de otorgarse el arrendamiento de los terrenos sumergidos, las partes hubiesen convenido y entendido que los pilotes y postes al ser colocados se convirtieran inmediatamente en parte de los terrenos sumergidos y en propiedad del arrendador, y que la demandante a partir de ese momento tan sólo tendría un interés como arrendataria en dichos pilotes y postes, no es probable que hubiesen fijado como una venta razonable de la propiedad arrendada el tipo especificado en el arrendamiento, o sea, $120 al año durante un término de cincuenta años.

El alegato de la apelante no suministra razón satisfactoria alguna para que se haga una diferencia entre una subestructura y una superestructura en un caso de esta naturaleza. Los pilotes que formaban la subestructura eran parte inte-

grante del "muelle de servicio público de dos plantas." Los postes (*dolphins*) de no ser parte integrante del muelle, eran dependencias de los mismos y no "mejoras" separadas o independientes. La franquicia no disponía la construcción de un muelle y de un edificio de dos plantas sobre el mismo, sino que autorizaba la construcción, mantenimiento y explotación de un "muelle de servicio público de dos plantas."

A nuestro juicio, el juez de distrito estuvo en lo cierto al interpretar el *Disponiéndose* en el sentido de que las mejoras a que allí se hacía referencia serían propiedad del Pueblo de Puerto Rico al expirar el término de la franquicia. Si el "muelle de servicio público de dos plantas" era un edificio dentro del significado de la frase "excluyendo los edificios" contenida en el *Disponiéndose,* ni los postes ni los pilotes pasarían á poder del Pueblo de Puerto Rico bajo los términos del *Disponiéndose* al expirar el contrato de arrendamiento. Si el "muelle de servicio público de dos plantas" puede ser clasificado como una de las "mejoras" distintas a "los edificios" a que se hace referencia en el *Disponiéndose,* entonces el título de los postes y pilotes pasaría al Pueblo de Puerto Rico al transcurrir el período de cincuenta años especificado en la franquicia y en el arrendamiento. En ausencia de datos respecto al tipo de depreciación de los pilotes y postes, no es necesario que especulemos en torno al deterioro probable durante tal período. No tenemos mayor razón para creer que la Junta de Revisión e Igualamiento justipreció exageradamente el valor de los postes y pilotes al dejar de tomar en consideración la naturaleza restringida del derecho de propiedad de la demandante en los mismos que la que tenemos para creer que la Junta menospreció el valor de los postes y pilotes al dejar de tomar en consideración el probable aumento en valor por razón del privilegio de mantener y explotar el muelle durante un período de cincuenta años.

Quizás hubiera bastado decir que la apelante no nos ha colocado en posición de resolver las cuestiones que trata de levantar en su señalamiento de errores. Empero, si estamos

en lo cierto en las conclusiones a que hemos llegado, cuanto hemos dicho resuelve en una forma u otra las dos cuestiones planteadas en el alegato de la apelante.

*La sentencia apelada debe ser confirmada.*

Los Jueces Señores Presidente del Toro y Asociado Córdova Dávila, no intervinieron.